## Compton's Estate.

*Orphans' court—Findings of fact—Conclusiveness of.*

A finding by the orphans' court on competent evidence that the signature of a decedent to a contract is genuine, will not be disturbed in the absence of manifest error.

*Contract—Support of father—Parent and child.*

An agreement between two sons that one of them will take their aged father into his family, and that the other will pay his share of the expenses of support and maintenance of the father, is a valid contract, although there may be other children who might under the poor laws be compelled to contribute to their father's support, and although the amount to be paid was not fixed at any definite sum.

Argued Jan. 12, 1906.    Appeal, No. 39, Jan. T., 1906, by Clarence Watrouse, from decree of O. C. Lackawanna Co., distributing fund in Estate of Cornelius Compton, deceased. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON, HENDERSON and HEAD, JJ.    Affirmed.

606 COMPTON'S ESTATE.

Statement of Facts—Assignment of Errors. [30 Pa. Superior Ct.

Exceptions to adjudication.

From the record it appeared that J. J. Compton and Cornelius Compton entered into the following contract in writing :

> "June 26, 1897.
>
> "Agreement made between J. J. Compton and Cornelius Compton heirs and sons of Jehial Compton. I hereby agree to the appointment of J. J. Compton as administrator of our father's estate to collect all money due from insurance and other sources and to pay all bills incurred at the time of his death, and I hereby agree to stand my share of the expense and caring for his support as long as he lives.
>
> "J. J. COMPTON, (L. S.)
> "CORNELIUS COMPTON, (L. S.)"

In construing this contract SANDO, J., said :

The parties were brothers. One lived in Scranton and the other in Hallstead in another county. The one was single, having been divorced from his wife, and was not keeping a house of his own, but boarding ; the other was housekeeping with his family ; the father was seventy-seven years old, somewhat infirm and, ailing, and being without a home, or means of support, had recently gone to the home of his son in Hallstead.

The sons were evidently providing for his support, and while the paper suggests that it was made at a time when his early death was contemplated there is nothing in that to impair its effect. Taking into consideration its contents, the subject-matter, the relation and situation of the parties, the meaning to be collected from the paper is found to be that Jacob Compton was to support the father at his home during the balance of his life ; Cornelius Compton was to share that expense equally with him, and such interest as he might have in the father's life insurance was intended to be transferred to Jacob Compton as security.

The court entered a decree of awarding the sum of $624 to J. J. Compton.

Clarence Watrous, guardian of a minor son of Cornelius Compton, appealed.

*Errors assigned* was the decree of the court.

*C. A. Van Wormer* with him *John F. Scragg*, for appellant.— An appellate court does not hesitate to reverse a judgment entered upon a verdict based upon insufficient evidence ; and the same is true of an auditor's findings of fact : Fehl's Estate, 13 Pa. Superior Ct. 601; Fague's Est., 19 Pa. Superior Ct. 638 ; Coleman's Est., 200 Pa. 42; Steele's App., 72 Pa. 101.

If the meaning of the contract is obscure, indefinite and doubtful, the contract will be declared void for uncertainty : Purves's Estate, 196 Pa. 438.

*Clarence Balentine*, with him *Charles Connell*, for appellee, cited : Bearmer's App., 126 Pa. 77 ; Fehl's Est., 13 Pa. Superior Ct. 601.

OPINION BY HENDERSON, J., April 23, 1906 :

The principal question of fact presented for the consideration of the orphans' court was whether the contract of June 26, 1897, under which the appellee claimed, was executed by Cornelius Compton.    The allegation of the appellant was that the signature was a forgery.    The evidence in support of this allegation consisted of the testimony of the divorced wife of the decedent as to the genuineness of the signature and the opinion of experts based upon a comparison of signatures.    On behalf of the appellee the father of the decedent testified that the signature was that of Cornelius and that the latter had talked with him about the paper something over a year before.    Expert testimony was also introduced, as were several exemplars of the handwriting of the decedent to be used for comparison with the impeached signature.    The testimony is voluminous and it is unnecessary to discuss it at length.    After what seem to have been a careful and impartial consideration of the evidence the court reached the conclusion that it preponderated in favor of the genuineness of the signature.    The burden is upon the appellant to show that a mistake was made in so doing, and the finding must stand until the error is clearly pointed out.    There was competent evidence before the court on which the conclusion could be based and we are not convinced that it was insufficient to support the finding.    Objection was made to the admission of the evidence of Jehial Compton, but he was clearly competent.    He was neither a party to the contract nor

had he a legal interest with reference thereto adverse to the right of the deceased party. He did not have a right of action on the contract nor was it a matter of any concern to him, legally speaking, whether the claim arising therefrom was al-lowed or not.

The appellant contends that even if the contract is genuine it is void for uncertainty in that it does not express what proportion of the expense to be incurred in maintaining his father was to be paid by the decedent. Taking into consideration the situation and relation of the parties the agreement is not difficult of interpretation. There were two parties to the obligation. It is under seal and imports a consideration. The evidence also shows that the consideration contemplated in the agreement, namely, the support of their father, passed from the appellee to his brother, Cornelius. Jacob was married and had a home of his own. Cornelius was not keeping house. Their father was seventy-seven years of age and infirm in health and without any estate adequate to his support. In order that he might be properly cared for, it was agreed between Jacob and Cornelius that the former would take the father to his own home and properly provide for him and in consideration of that undertaking Cornelius bound himself " to stand my share of the expense and caring for his support as long as he lives." As the arrangement for the maintenance of their father was made by the parties to the contract and as there were but two parties to that contract there is but one interpretation of it which will stand the test of criticism and that the court put upon it. It was an agreement by Cornelius with Jacob that if the latter would keep their father, he (Cornelius) would pay his share of the expense, and that is one-half of the cost of maintenance. Jacob undertook the burden of support because of the promise of Cornelius to share in the cost and so far as the liability of the parties under this contract is concerned that share is one-half of the expense. It may be that if a proceeding had been instituted under the statute, a third son might have been compelled to contribute to his father's support, but the burden which Jacob assumed and which Cornelius agreed to share did not arise under the poor law but was a voluntary undertaking in which they had a right to engage and which was creditable to their filial impulse. The failure to fix an

amount to be paid by Cornelius does not affect the validity of the obligation. It is evident that it might have been in the contemplation of the parties that the sum would vary with the age and physical condition of the father. Medical services and nursing might be required at times and not at other times and the amount was not improperly left for determination according to the varying conditions. The pith of the contract is the agreement to pay and in the absence of a sum named the value of the thing rendered will be implied. There is no denial that support was furnished the father by the appellee up to the time of the death of Cornelius and the value of this service is shown by competent evidence. Having established, therefore, an express contract to pay for the services and produced evidence of the value thereof a case was presented entitling the appellee to a decree in his favor. The case is not one of a stale claim against a decedent's estate or of a claim resting upon vague, parol evidence. The obligation was in writing and possessed the essential elements of a valid contract. The claim is not for the wages of domestic service as to which a presumption of payment arises, according to the custom of the country, and the numerous authorities cited upon that subject are not relevant. The appellee brought himself within the doctrine of Payne's Estate, 204 Pa. 535, where a claim more than six years old was allowed. A careful examination of the evidence brings us to the conclusion that the action of the court should be sustained.

The decree is affirmed.